UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| NATHAN HANCOCK, individually and on behalf of all others similarly situated, | ) ) DOCKET NO. _____ |
| Plaintiff, | ) ) JURY TRIAL DEMANDED |
| vs. | ) ) COLLECTIVE ACTION ) PURSUANT TO 29 U.S.C. § 216(b) |
| LARIO OIL & GAS COMPANY, | ) ) |
| Defendant. | ) ) ) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Nathan Hancock ("Plaintiff" or "Hancock") brings this lawsuit to recover unpaid overtime wages and other damages from Lario Oil & Gas Company ("Defendant" or "Lario") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2. Lario employs oilfield personnel, like Hancock, to carry out its work.

3. Hancock, and the other workers like him, were typically scheduled for 12 hour shifts, 7 days a week, for weeks at a time.

4. But Lario does not pay all of these workers overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of paying overtime as required by the FLSA, Lario pays these workers a day-rate and classifies them as independent contractors.

6. This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

7. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Lario's corporate headquarters are located in this District.

## PARTIES

9. From approximately March 2017 until August 2017, Hancock worked for Lario as an oilfield contractor and/or company man. Throughout his employment with Lario, he was paid a day-rate with no overtime compensation and was misclassified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

10. Hancock brings this action on behalf of himself and other similarly situated workers who were classified as independent contractors and paid by Lario's day-rate system.

11. Lario paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

12. The class of similarly situated employees sought to be certified as a collective action under the FLSA is defined as:

> **All oilfield workers who worked for Lario Oil & Gas Company during the past 3 years who were classified as independent contractors and paid a day-rate with no overtime (the "Putative Class Members").**

13. Hancock seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

14. Defendant Lario Oil & Gas Company may be served through its registered agent: **David E. Loger, 301 S. Market Street, Wichita, Kansas 67202 or wherever he may be found.**

## COVERAGE UNDER THE FLSA

15. Lario has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. Lario has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

17. Lario has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

18. Hancock and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

19. As will be shown through this litigation, Lario treated Hancock and the Putative Class Members as employees and uniformly dictated the pay practices to which Hancock and the Putative Class Members were subjected.

20. Lario's misclassification of Hancock and the Putative Class Members as independent contractors does not alter its status as an employer for purposes of the FLSA.

## FACTS

21. In order to create the goods, and provide the services, it markets to its customers, Lario employs oilfield personnel like Hancock and the Putative Class Members.

22. These oilfield workers carry out the hands-on, day-to-day production work of Lario.

23. Lario paid Hancock and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

24. Hancock worked for Lario from approximately March 2017 until August 2017 as a company man.

25. Hancock was paid on a day-rate basis.

26. Lario typically scheduled Hancock to work 12 hour shifts, for as many as 7 days a week.

27. During each year of his employment, Hancock regularly worked well in excess of 40 hours in a workweek.

28. But Lario did not pay Hancock overtime.

29. The work Hancock performed was an essential part of producing Lario's core products and/or services.

30. During Hancock's employment with Lario, Lario exercised control (directly or jointly through another company) over all aspects of Hancock's job.

31. Hancock did not make any substantial investment in order to perform the work Lario required of him.

32. Lario determined Hancock's opportunity for profit and loss.

33. Hancock's earning opportunity was based on the number of days Lario scheduled him to work.

34. Hancock was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in the same job position) to perform their job duties.

35. Hancock was not employed by Lario on a project-by-project basis, but rather on a

consistent basis.

36. While Hancock was classified as an independent contractor, he was regularly on call for Lario and was expected to drop everything and work whenever needed.

37. Lario controlled all the significant or meaningful aspects of the job duties performed by Hancock.

38. Lario controlled the hours and locations Hancock worked, the tools he used, and the rates of pay he received.

39. Even when Hancock worked away from Lario's offices or job sites without the presence of a direct supervisor, Lario still controlled all aspects of Hancock's job activities by enforcing mandatory compliance with Lario's and/or its client's policies and procedures.

40. More often than not, Hancock utilized equipment provided by Lario to perform his job duties.

41. Hancock did not provide the essential equipment he worked with on a daily basis.

42. Lario made the large capital investments in buildings, machines, equipment, tools, and supplies in the business that Hancock worked in.

43. Hancock did not incur operating expenses like rent, payroll, marketing, and insurance.

44. Hancock was economically dependent on Lario during his employment.

45. Lario set Hancock's rates of pay, his work schedule, and prohibited him (formally or practically) from working other jobs for other companies while they were working on jobs for Lario.

46. Very little skill, training, or initiative, in terms of independent business initiative, was required of Hancock to perform his job duties.

47. Indeed, the daily and weekly activities of Hancock and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created or mandated by Lario.

48. Virtually every job function performed by Hancock and the Putative Class Members was pre-determined by Lario and/or their clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

49. Hancock and the Putative Class Members were generally prohibited from varying their job duties outside of the pre-determined parameters.

50. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to oil and gas operations in the field.

51. Hancock performed routine manual and technical job duties that were largely dictated by Lario.

52. All of the Putative Class Members perform the similar job duties and are subjected to the similar policies and procedures which dictate the day-to-day activities performed by each person.

53. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

54. The Putative Class Members regularly worked in excess of 40 hours each week.

55. Like Hancock, the Putative Class Members were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

56. Lario did not pay Hancock on a salary basis.

57. Lario did not pay the Putative Class Members on a salary basis.

58. Lario paid the Hancock on a day-rate basis.

59. Lario paid the Putative Class Members on a day-rate basis.

60. Lario failed to pay Hancock overtime for hours worked in excess of 40 hours in a single workweek.

61. Lario failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

62. Lario knew, or acted with reckless disregard for whether, Hancock and the Putative Class Members were misclassified as independent contractors.

63. Lario classifies other workers who perform substantially similar work, under similar conditions, as employees.

64. For example, Lario classifies one or more of its completion consultants as an "employee" for the purposes of withholding employment taxes.

65. Lario classifies one or more of its completion consultants as an "employee" for the purposes of its ERISA benefit plans.

66. Lario's policy of failing to pay Hancock and the Putative Class Members overtime violates the FLSA because these workers are, for the purposes of the FLSA, employees.

67. Lario's day-rate system violates the FLSA because Hancock and the other day-rate workers classified as independent contractors did not receive any pay for hours worked over 40 hours each week.

68. Because Hancock and the Putative Class Members were misclassified as independent contractors by Lario, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

## FLSA V<small>IOLATIONS</small>

69.     Lario violated, and is violating, the FLSA by employing Hancock and the Putative Class Members for workweeks longer than 40 hours without paying them overtime.[1]

70.     Lario knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Hancock and the Putative Class Members overtime.

71.     Lario's failure to pay overtime to Hancock and the Putative Class Members was not reasonable, nor was the decision not to pay overtime made in good faith.

72.     Accordingly, Hancock and the Putative Class Members are entitled to overtime under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## C<small>OLLECTIVE</small> A<small>CTION</small> A<small>LLEGATIONS</small>

73.     The illegal pay practices Lario imposed on Hancock were likewise imposed on the Putative Class Members.

74.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

75.     Numerous other individuals who worked with Hancock were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

76.     Based on his experiences and tenure with Lario, Hancock is aware that Lario's illegal practices were imposed on other Putative Class Members.

77.     The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

---

[1] This same conduct violates numerous state laws. Therefore, following some discovery and the opt-in process, Plaintiff may seek leave to add additional claims under state laws.

78. Lario's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

79. Hancock's experiences are therefore typical of the experiences of the Putative Class Members.

80. The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

81. Hancock has no interests contrary to, or in conflict with, the Putative Class Members.

82. Like each Putative Class Member, Hancock has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

83. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

84. Absent a class and collective action, many members of the Putative Class Members will not obtain redress of their injuries and Lario will reap the unjust benefits of violating the FLSA and applicable state labor law.

85. Furthermore, even if some of the Putative Class Members could afford individual litigation against Lario, it would be unduly burdensome to the judicial system.

86. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

87. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.      Whether Lario employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA;

      b.      Whether the Putative Class Members were improperly misclassified as independent contractors;

      c.      Whether Lario's decision to classify the members of the Class as independent contractors was made in good faith;

      d.      Whether Lario's decision to not pay time and a half for overtime to the members of the Class was made in good faith;

      e.      Whether Lario's violation of the FLSA was willful; and

      f.      Whether Lario's illegal pay practices were applied to the Putative Class Members.

88. Hancock and the Putative Class Members sustained damages arising out of Lario's illegal and uniform employment policy.

89. Hancock knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

90. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

Hancock demands a trial by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

## RELIEF SOUGHT

WHEREFORE, Hancock prays for judgment against Lario as follows:

a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. For an Order appointing Hancock and his counsel to represent the interests of the FLSA Class;

c. For an Order finding Lario liable to Hancock and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Eric L. Dirks
Eric L. Dirks, KS Bar No. 77996
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
o: 816-945-7110
f: 816-945-7118
dirks@williamsdirks.com

Michael A. Josephson
State Bar No. 24014780
*(Pro Hac Vice Application Forthcoming)*

mjosephson@mybackwages.com
Andrew W. Dunlap
State Bar No. 24078444
*(Pro Hac Vice Application Forthcoming)*
adunlap@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
*(Pro Hac Vice Application Forthcoming)*
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**